UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHNNY RAY CHANDLER, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 15-0012 (BAH) |
| SUSAN STOVER, | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| JOHNNY RAY CHANDLER, SR., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 15-0013 (BAH) |
| SUSAN STOVER, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the defendants' Motion to Dismiss or, in the Alternative for Summary Judgment, ECF No. 49. For the reasons discussed below, the motion will be granted.

**I. BACKGROUND**

The plaintiff was returned to the custody of the Federal Bureau of Prisons ("BOP") on January 17, 2007 after his parole was revoked. Defs.' Statement of Material Facts as to which There Is No Genuine Dispute, ECF No. 49 ("Defs.' SOMF") ¶ 4. From July 14, 2010 through

February 9, 2015, he was incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). *Id*. He was transferred out of USP Lewisburg on February 9, 2015 and arrived at the Administrative Maximum Facility in Florence, Colorado ("ADX Florence") on March 2, 2015. *Id*. ¶ 5. The claims arising out of these consolidated cases stem from the plaintiff's custody at these two institutions, USP Lewisburg and ADX Florence.

A. Claim One

The plaintiff's first claim is brought against Susan Stover, formerly his Unit Manager at USP Lewisburg, in her individual capacity. *See* Compl. at 4, 6 (page numbers designated by the plaintiff).[1] The plaintiff alleges that, on or about January 30, 2014, he sent Stover a written marriage proposal:

> Ms. Stover, this is a proposal. But, it is not a Sexual Proposal. This is a Marriage Proposal. This Proposal is being sent to you under the First Amendment of the Constitution (Freedom of Speech, Choice and Association). Under Freedom of Speech, I Love you very much. Under Freedom of Choice, You are the woman I choose to marry. So, I request that you marry me.

Compl. at 6-7. The proposal was presented as an inmate request to staff, or "cop-out." *See* Mem. of P. & A. in Support of Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") at 24. Stover did not respond to the plaintiff with a simple "yes or no." Compl. at 7. Rather, she issued an Incident Report, *see* Defs.' Mem., Ex. 4 (Incident Report Number 2543699), charging the plaintiff "with a Code 206, Making a Sexual Proposal," Compl. at 7; *see* Defs.' Mem., Ex. 4 (Discipline Hearing Officer Report regarding Incident Report Number 2543699) at 1.

---

[1] Pursuant to the Court's November 25, 2015 Order, ECF No. 44, the operative pleading in this consolidated action is Plaintiff's Amended Complaint, ECF No. 45 ("Compl.").

The plaintiff chose not to attend a hearing before a Disciplinary Hearing Officer ("DHO"), who ultimately found that "the greater weight of the evidence" supported the conclusion that the plaintiff "violated code 298/206, Interfering with staff in the performance of their duties, Most like Making a sexual proposal[.]" Defs.' Mem., Ex. 4 (Discipline Hearing Officer Report regarding Incident Report Number 2543699) at 3. The DHO imposed the following sanctions:

> Forfeit Statutory Good Time: 60 days
> Disciplinary Segregation: 90 days
> Loss of Commissary Privilege: 16 months
> Loss of Visiting Privilege: 16 months
> Loss of Telephone Privilege: 16 months
> Loss of Mattress: 13 months
> Impound Personal Property (except legal material): 9 months
> Monetary Fine: $27

*Id*., Ex. 4 (Discipline Hearing Officer Report regarding Incident Report Number 2543699) at 4.

According to the plaintiff, he has "a constitutional right to marry the woman of [his] choice[, a]s long as the woman . . . is not an enemy of this Country or a member of an enemy Organization." Compl. at 8. He deems Stover's "writing and filing that malicious and sadistic Incident Report" a violation of his rights to "Freedom of Speech, Freedom of Choice, and Freedom of Association." *Id*. For these alleged violations of rights protected under the First Amendment to the United States Constitution, the plaintiff "move[s] this Court[] to find . . . Stover guilty as charged." *Id*.

B.   Claim Two

Next, the plaintiff sues David R. Wilson, USP Lewisburg's Associate Warden of Programs, in his individual capacity for alleged violations of his rights protected under the First and Fifth Amendments to the United States Constitution. *Id*. at 9. This claim arises from the plaintiff's transfer from USP Lewisburg to ADX Florence.

3

The plaintiff began a Special Management Unit (SMU) Program at the Federal Correctional Institution in Oakdale, Louisiana in August 2009, and continued his participation in the SMU Program after his transfer to USP Lewisburg.  *See* Defs.' Mem., Ex. 5 (ADX General Population Hearing Administrator's Report) at 1.  "Since designation to the SMU Program, [the plaintiff] incurred an additional 136 disciplinary actions, including 27 disciplinary actions for Code 206, Making Sexual Proposals, as well as multiple instances of Code 203, Threatening Bodily Harm, Code 224, Assault, [and] Code 104, Possession of a Weapon," among other infractions.  *Id.*, Ex. 5 (ADX General Population Hearing Administrator's Report) at 1.  Based on the staff's "collective perception . . . that [the plaintiff's] failure to adequately progress in the SMU Program [was] based on his disruptive conduct and total disregard for [BOP] rules and regulations[,]" the Warden proposed that the plaintiff be transferred to the General Population Unit at ADX Florence.  *Id.*, Ex. 5 (Memorandum to Jose Santana, Chief, Designation and Sentence Computation Center, from J.E. Thomas, Warden, USP Lewisburg, dated March 20, 2004) at 1.

"On July 3, 2014, [the plaintiff] was given the Notice of Hearing on Referral for Transfer to the General Population at the ADX in Florence, Colorado, which outlined the basis for the placement recommendation."  Defs.' SOMF ¶ 19.  A hearing on the transfer took place on November 7, 2014 "at which [the plaintiff] was present and during which he provided a statement."  *Id.* ¶ 20.  It was determined that the plaintiff warranted placement at ADX Florence.  *See* Defs.' Mem., Ex. 5 (ADX General Population Placement Decision).

The plaintiff appealed the transfer on January 28, 2015.  *See* Compl. at 9; Defs.' SOMF ¶ 22.  According to the plaintiff, the appeal should have delayed his transfer for 30 days.  Compl. at 9.  However, Associate Warden Wilson allegedly caused the plaintiff to be transferred

4

promptly in response to the lawsuit the plaintiff had filed against Susan Stover. *Id*. at 9-10. The plaintiff's appeal was denied on April 17, 2015, weeks after his arrival at ADX Florence on March 2, 2015. Defs.' SOMF ¶ 23

In anticipation of his transfer, the plaintiff alleges, all of his property – including legal papers related to the instant civil action – was removed from his cell; none of his property has been returned to him. Compl. at 10. The plaintiff considers the loss of his legal papers "an Act of Denial of Access to the Court." *Id*. Further, because Wilson did not allow the plaintiff "to litigate [his] A.D.X. Transfer Appeal[,]" he claims that Wilson "intentionally denied and interferred [sic] with [the plaintiff's] Fifth Amendment Right to Due Process of Law." *Id*. at 11. The plaintiff demands injunctive relief, that is, transfer back to USP Lewisburg, and "monetary relief of: $175,000.00 from . . . Wilson . . . in his individual capacity." *Id*.

C.  Claims Three and Four

"On April 9, 2015, at approximately 11:00 a.m., [the plaintiff] had a verbal confrontation with Defendant VanSickle," Defs.' SOMF ¶ 24, a Senior Officer Specialist at ADX Florence, *see* Defs.' Mem., Ex. 6 (Incident Report Number 2703502) at 1. The incident occurred at approximately 11 a.m., after which "VanSickle issued an incident report," and a copy of the report "was provided to [the plaintiff] on April 10, 2015, at 1 p.m." Defs.' SOMF ¶ 25; *see* Defs.' Mem., Ex. 6 (Incident Report Number 2703502) at 2. The plaintiff was charged with Code 203, "Threatening another with bodily harm or any other offense." Defs.' Mem., Ex. 6 (Incident Report Number 2703502) at 1.

Referring to Program Statement 5270.09, <u>Inmate Discipline Program</u> (July 8, 2011), the plaintiff alleges that "[s]taff who has reason to believe that an inmate violated the regulations of the B.O.P. 'must' write an incident report detailing the inmate's involvement in the incident,"

which is delivered to the Operations Lieutenant who assigns a staff member to deliver a copy of the incident report to the inmate. Compl. at 12. According to the plaintiff, the Report was given to Operations Lieutenant Thompson in a timely manner, yet the plaintiff "was not served with the Report until 1:00 p.m. on [April 10, 2015]," *id*. at 13, roughly two hours beyond the 24-hour period within which an inmate "will *ordinarily* receive the incident report," 28 C.F.R. § 541.5(a) (emphasis added).

A disciplinary hearing took place on April 30, 2015, *see* Defs.' Mem., Ex. 6 (Discipline Hearing Officer Report regarding Incident Report Number 2703502) at 1, and the DHO noted the plaintiff's complaint "that he received notice of the infraction nearly two hours beyond the typical 24-hour period for such notice," Defs.' SOMF ¶ 26. "The DHO further noted that [he] 'could find no way in which the delay hindered [the plaintiff's] ability to prepare a defense,'" and that the plaintiff provided no "evidence which would indicate the delay hindered [his] ability to prepare a defense." Defs.' SOMF ¶ 27.

The DHO found that the plaintiff committed the prohibited act, *id*. ¶ 28, and imposed the following sanctions:

> [Forfeit Statutory Good Time] – 30 days
> [Loss of Commissary, Visiting and Telephone Privileges] – 90 days
> [Impound Personal Property] – 90 days
> Monetary Fine – $10

Defs.' Mem., Ex. 6 (Discipline Hearing Officer Report regarding Incident Report Number 2703502) at 3.

The plaintiff alleges that defendant Thompson's failure to provide him notice within 24 hours of the incident violated a federal law. Compl. at 13. He demands "Monetary Relief: $175,000.00 from [Thompson] in his individual capacity," and injunctive relief by expungement of the incident report from the plaintiff's institutional records. *Id*. at 14. Further, the plaintiff

6

alleges that defendant VanSickle is part of a "Civil Conspiracy," *id*., with defendant Thompson, *id*. at 15, and together they "made arrangements to have [the plaintiff] removed from General Population[] Without be[ing] afforded any form of Procedural Due Process." *Id*. The plaintiff demands monetary damages of "$100,000.00 from [VanSickle] in his individual capacity" and injunctive relief in the form of his return to general population. *Id*. at 16.

D.     Claim Five

The plaintiff next targets G. Santini, M.D., whom he identifies as the Clinical Director at ADX Florence. Compl. at 16. According to the plaintiff, Dr. Santini deprived him of rights protected under the Eighth Amendment to the United States Constitution by denying him proper medical treatment. *See id*. at 16-18.

Shortly after the plaintiff's arrival at ADX Florence, on March 10, 2015, Dr. Santini conducted the plaintiff's initial intake evaluation "at which time [the plaintiff] informed Dr. Santini . . . [t]hat [he] was suffering with very serious nerve damage [to both] hands" and that he did "not have any sensitivity in [his] fingers." Compl. at 17. The plaintiff asked Dr. Santini to prescribe a Gabapentin for nerve pain, and "to be tested and treated by a [n]eurologist." *Id*.

The plaintiff submitted an administrative remedy request on April 22, 2015 claiming "imminent danger of serious physical injury due to nerve damage to both hands," and he "requested an MRI and [an evaluation] by a neurologist." Defs.' SOMF ¶ 30. Dr. Santini evaluated the plaintiff again on May 13, 2015, at which time the plaintiff "renewed his request to be seen by a [n]eurologist." *Id*. ¶ 31. Dr. Santini noted that the plaintiff was not in pain at that time. *Id*. "Along with several other medications [the plaintiff] was given for different ailments," Dr. Santini "prescribed Naproxen 500 mg tablets for any nerve pain [he] might experience." *Id*. In addition, Dr. Santini "advised [the plaintiff] to sign up for sick call as needed," and he "would

consider a [n]eurology consult at [the plaintiff's] next clinic appointment" six months later.  *Id*. ¶ 32; *see generally* Defs.' Mem., Ex. 8 (Records of Health Services Clinical Encounter) at 2-3.

According to the plaintiff, Dr. Santini did not respond to his request for medical treatment "which is an act of deliberate indifference and denial of needed medical attention."  Compl. at 17.  He demands "$300,000.00 for Cruel and Unusual Punishment and Deliberate Indifference," and injunctive relief in the form of a visit to a hospital to "be examined and treated by a Neurologist, for nerve damage in both hands[.]"  *Id*. at 18.

E.     Claim Six

The plaintiff's last claim is against the BOP, which allegedly denies the plaintiff's "First Amendment Right (Freedom of Speech[] and Association) [and his] Right to Privacy."  Compl. at 19.  Specifically, the plaintiff challenges a BOP policy pursuant to which his personal correspondence must remain open and unsealed so that prison staff can read it before it leaves the institution for mailing.  *See id*.  In addition to a declaratory judgment, the plaintiff demands monetary damages of $300,000.00 and injunctive relief, that is, "be[ing] allowed to seal all of [his] outgoing personal correspondence."  *Id*.

**II.    DISCUSSION**

The defendants filed their motion on January 15, 2016.  The Court issued an order, ECF No. 50, on January 19, 2016, advising the plaintiff of his obligation to file an opposition to the motion by March 1, 2016, and the consequences of his failure to do so.  On the plaintiff's motion, the Court extended the deadline to April 1, 2016, and later, also on the plaintiff's motion, issued a minute order on February 18, 2016 staying the case.  On July 14, 2016, the plaintiff filed Plaintiff's Motion to Lift the Stay, ECF No. 63, and on July 22, 2016, he filed the Plaintiff's Rebuttal to the Defendants' Motion for Summary Judgment, ECF No. 67 ("Pl.'s

Opp'n"). On the mistaken belief that the plaintiff had not yet filed an opposition to defendants' motion, on July 26, 2016, the Court issued an order, ECF No. 66, lifting the stay and setting August 26, 2016 as the deadline for the plaintiff's opposition.[2] He filed Plaintiff's Opposition to Summary Judgment, ECF No. 68 ("Pl.'s Supp. Opp'n"), on August 22, 2016. For the reasons explained below, the plaintiff's claims are dismissed.

## A. Personal Jurisdiction[3]

Defendants Stover, Wilson, Thompson, VanSickle, and Santini move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See generally* Defs.' Mem. at 13-18. When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *First Chicago Int'l v. United Exch. Co*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). To establish that personal jurisdiction exists, the plaintiff must allege specific facts that connect the defendants with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

The Court determines whether personal jurisdiction may be exercised "by reference to District of Columbia law." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). "A District of Columbia court may exercise personal jurisdiction over a person domiciled in . . . or maintaining [his or her] . . . principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. Nowhere in the complaint does the plaintiff allege that Stover, Wilson, Thompson, VanSickle or Santini either is domiciled in or maintains his or her

---

[2] Although the Clerk of Court received Plaintiff's Rebuttal to the Defendants' Motion for Summary Judgment on July 14, 2016, the document was not entered on CM-ECF until July 27, 2016.

[3] For purposes of this discussion, the Court proceeds as if service of process on all the individual defendants has been effected properly. The defendants' motion to dismiss for lack of proper service under Federal Rule of Civil Procedure 12(b)(5), *see* Defs.' Mem. at 10-12, will be denied without prejudice.

principal place of business in the District of Columbia. Rather, according to the plaintiff, Stover and Wilson are residents of Pennsylvania, *see* Compl. at 6, 9, and Thompson, VanSickle, and Santini are residents of Colorado, *see id.* at 11, 14, 16.

In this circumstance, the Court engages in a two-part inquiry to determine whether it may exercise personal jurisdiction over a non-resident defendant. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). First, the Court must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute, and second, it must determine whether the exercise of jurisdiction comports with due process. *See id.*; *First Chicago*, 836 F.2d at 1377. This second component of the analysis turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). Such minimum contacts must arise from "some act by which the defendant purposefully avails [himself or herself] of the privilege of conducting activities within the [District of Columbia], thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). In other words, each individual defendant's "conduct and connection with the [District of Columbia must be] such that [he or she] should reasonably anticipate being haled into court" in the District of Columbia. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In relevant part, the District of Columbia long-arm statute provides that:

> A District of Columbia court may exercise personal jurisdiction over
> a person . . . as to a claim for relief arising from the person's –
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;

> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. . . .

D.C. Code § 13-423(a).[4] The complaint alleges no facts suggesting that these defendants transacted business, contracted to supply services, engaged in any other persistent course of conduct, or caused tortuous injury in the District of Columbia, and therefore, the plaintiff does not establish jurisdiction under the long-arm statute.

Moreover, the plaintiff may not rely on the individual defendants' status as employees of the BOP, the headquarters of which is in the District of Columbia, to establish a sufficient connection to this forum. "Federal government employment does not render these defendants subject to suit in their individual capacities in a District of Columbia court." *Morton v. Bolyard*, 810 F. Supp. 2d 112, 117 (D.D.C. 2011) (citations omitted); *see Hampton v. Comey*, No. 14-CV-1607, 2016 WL 471277, at *6 (D.D.C. Feb. 8, 2016), *appeal docketed*, No. 16-5058 (D.C. Cir. Mar. 23, 2016); *Johnson v. United States*, 590 F. Supp. 2d 101, 111-12 (D.D.C. 2008); *see also Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980) (holding that absent minimum contacts other than those arising from federal employment, a court may not exercise personal jurisdiction over a federal official in his individual capacity).

For these reasons, the plaintiff fails to demonstrate that this Court may exercise personal jurisdiction over defendants Stover, Wilson, Thompson, VanSickle and Santini. *See, e.g., Duarte v. Nolan*, __ F. Supp. 3d __, __, 2016 WL 2885872, at *4 (D.D.C. May 17, 2016); *Scinto*

---

4 The alternative bases set forth under the long-arm statute for exercising jurisdiction are inapplicable to this case.

*v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 8 (D.D.C.), *aff'd,* 352 F. App'x 448 (D.C. Cir. 2009). The Court therefore grants their motion to dismiss for lack of personal jurisdiction.

## B. Venue

The defendants move to dismiss all of the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(3) for improper venue. *See generally* Defs.' Mem. at 18-21. Generally, the plaintiff bears the burden of demonstrating that venue is proper. *See Walden v. Locke*, 629 F. Supp. 2d 11, 13 (D.D.C. 2009). "In considering a Rule 12(b)(3) motion, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Id.* (quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)).

Where, as here, the plaintiff brings constitutional claims against employees of the federal government for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), venue is determined under 28 U.S.C. § 1391(b), *see Stafford*, 444 U.S. at 544, which in relevant part provides:

> A civil action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . .; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The individual defendants argue that venue is not proper in the District of Columbia for two reasons: not all of the defendants reside in the District of Columbia, and none of the alleged actions or omissions giving rise to the plaintiff's claims took place in the District of Columbia. *See* Defs.' Mem. at 19. Rather, it is apparent from the complaint that the alleged

constitutional violations occurred at USP Lewisburg and ADX Florence, that is, in the Middle District of Pennsylvania and the District of Colorado, respectively.

The BOP, too, moves to dismiss for improper venue. *See id.* Since BOP is an agency of the federal government, venue is determined under 28 U.S.C. § 1391(e), which allows an action to be brought in the district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . , or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The plaintiff's claim against the BOP pertains to a policy for the handling of inmates' mail, the implementation of which occurred at USP Lewisburg and ADX Florence.

The plaintiff cannot point to the location of the BOP's headquarters alone to establish venue in this district. While "[c]ourts in the District of Columbia have found venue to be proper when the agency official was personally involved in the decision making process," *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009), the plaintiff makes no such allegations in his complaint. Without the alleged participation of BOP official in any decision with respect to the handling of the plaintiff's correspondence, this district is not the proper forum for adjudication of his claim against the BOP. The defendants' motion to dismiss for improper venue will be granted.

**C. Exhaustion of Administrative Remedies**

Even if this Court could exercise personal jurisdiction over defendants Stover, Wilson, Thompson, and VanSickle, the defendants present an alternative basis for dismissal of the plaintiff's claims claims against these individual defendants and against the BOP: failure to exhaust administrative remedies before filing this lawsuit. *See generally* Defs.' Mem. at 7-9.

In relevant part, the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). "Even if an inmate believes that seeking administrative relief from the prison would be futile and even if the grievance system cannot offer the particular form of relief sought, the prisoner nevertheless must exhaust the available administrative process." *Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008) (citing *Booth*, 532 U.S. at 739). Thus, a prisoner may file a civil action concerning conditions of his confinement under federal law only after he has exhausted the prison's administrative remedies. *See Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

Exhaustion under the PLRA is not a jurisdictional requirement, however. *See Jones*, 549 U.S. at 216; *Woodford*, 548 U.S. at 101. It is instead an affirmative defense, *Jones*, 549 U.S. at 216, which "the defendants have the burden of pleading and proving." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (internal quotation marks omitted)); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.), *cert. denied sub nom Alameida v. Wyatt*, 540 U.S. 810 (2003). The defendants meet their burden.

The BOP's Administrative Remedy Program is the means by which a federal inmate may "seek formal review of any aspect of [his] confinement." Defs.' Mem., Decl. of Carolyn

Lanphear ("Lanphear Decl.") ¶ 4.  "The program is typically a four-tiered review process comprised of an informal resolution process and then formal requests to the Warden, the Regional Director, and the Office of General Counsel."  Lanphear Decl. ¶ 4.

First, if the inmate has not successfully resolved the matter informally, he may file a formal administrative remedy request at the institutional level to the Warden (commonly called a "BP-9").  *Id*. ¶¶ 4-5; *see* 28 C.F.R. §§ 542.13-542.14.  The Warden has 20 calendar days to respond, and if the inmate is not satisfied with the Warden's response, the inmate may file an appeal to the Regional Director (commonly called a "BP-10") within 20 calendar days of the date the Warden signed his response to the BP-9.  Lanphear Decl. ¶ 5; *see* 28 C.F.R. §§ 542.15, 542.18.  The Regional Director has 30 calendar days to respond, and if the inmate is dissatisfied with the Regional Director's determination, he may appeal to the General Counsel at BOP's Central Office (commonly called a "BP-11") within 30 calendar days of the Regional Director's response to the BP-10.  Lanphear Decl. ¶ 5; *see* 28 C.F.R. § 542.15.  The Office of General Counsel has 40 calendar days to respond, *see* 28 C.F.R. § 542.18, and "[a] final decision from the Office of General Counsel completes the BOP Administrative Remedy Program," Lanphear Decl. ¶ 5.  "The administrative remedy process is not complete until the Office of General Counsel replies, on the merits, to the inmate's BP-11 or if a response is not forthcoming within the time allotted for reply."  *Id*.; *see* 28 C.F.R. § 542.18.

According to the BOP's declarant, the plaintiff "has submitted a total of 110 formal administrative remedy requests and/or appeals with the BOP [between] January 30, 2014 [and] December 1, 2015," most of which "were rejected by the BOP as improperly filed in accordance with 28 C.F.R. § 542.17(a)."  Lanphear Decl. ¶ 8.  Only five of the plaintiff's administrative remedy requests were accepted.  *Id*. ¶ 9; *see id*., Attach. C.  Based on her review of these five

15

requests, the "[p]laintiff has failed to exhaust his remedies as related to the complaints against [d]efendants Stover, Wilson, Thompson, VanSickle, and the BOP raised in the present case through the BOP's Administrative Remedy Program." *Id.* ¶ 10; *see* Defs.' SOMF ¶¶ 33-37.

With respect to his claim against Stover, the plaintiff argues that his completion of a written request to staff, or "cop-out," fulfills any obligation he had to exhaust his administrative remedies. *See* Pl.'s Opp'n at 4-6. He argues that he followed BOP policy, which allows an inmate to make *any* type of request to staff on the requisite form, and he happened to request marriage. *See id.* at 6; Pl.'s Supp. Opp'n at 5. The plaintiff offers no argument or evidence, however, to rebut the defendants' showing that he failed to complete the four-step administrative remedy process for his claims against Stover, Wilson, Thompson, VanSickle or the BOP.[5]

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. It is fair to say that the plaintiff's claims against defendants Stover, Wilson, Thompson, VanSickle and the BOP are claims pertaining to prison conditions, circumstances or occurrences: the claims arise from inmate requests to staff, incident reports, disciplinary proceedings and resulting sanctions, the loss of personal property including legal papers, transfer from USP Lewisburg to ADX Florence, and the handling of inmate mail.[6] These are the types of claims a prisoner may raise in an administrative remedy request. *See, e.g., Banks v. Lappin*, 539 F. Supp. 2d 228, 237 (D.D.C. 2008) (alleging discrimination by BOP staff against plaintiff and challenging placement in a special housing unit); *Tanner v. Fed. Bureau of Prisons*, 475 F. Supp. 2d 103, 104 (D.D.C. 2007)

---

[5] Given the plaintiff's frequent use of the administrative remedy program, it strains credulity to conclude that the plaintiff somehow was unaware of the program's requirements.

[6] The plaintiff did exhaust his administrative remedies regarding the transfer to ADX Florence, but not the decision attributed to defendant Wilson to effect the transfer before his appeal was resolved.

(challenging transfer to another facility where prisoner could not complete vocational training on the ground that transfer effected a deprivation of his rights to equal protection and due process of law).

"[U]nexhausted claims cannot be brought in court," *Jones*, 549 U.S. at 211 (citing *Porter*, 534 U.S. at 524), and the defendants demonstrate that the plaintiff has failed to exhaust his available administrative remedies with respect to the claims he brings against defendants Stover, Wilson, Thompson, VanSickle, and the BOP. The Court will grant their motion to dismiss for failure to exhaust.

**D. The Plaintiff's Eighth Amendment Claim Against Dr. Santini**

The plaintiff managed to "exhaust his remedies as related to his medical complaints against [Dr.] Santini." Lanphear Decl. ¶ 10. Dr. Santini has moved to dismiss on the ground that the complaint fails to allege a viable claim under the Eighth Amendment. *See* Defs.' Mem. at 41-43.

"The Eighth Amendment bars the infliction of 'cruel and unusual punishments.'" *Chandler v. District of Columbia Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998) (quoting U.S. Const. amend. VIII). "A prisoner-plaintiff can state a claim for relief under the Eighth Amendment to the Constitution if he can establish that a prison doctor or medical staff responsible for his medical care were deliberately indifferent to his serious medical needs." *Brown v. Seranno*, No. 2:05-3342, 2006 WL 5003217, at *3 (D.S.C. Nov. 30, 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), *aff'd*, 238 F. App'x 992 (4th Cir. 2007). A medical need is "serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Cox v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992) (internal quotation marks and citations omitted). To show deliberate indifference, the plaintiff must allege that the

defendant had subjective knowledge of his serious medical need and "recklessly disregarded the excessive risk to inmate health or safety from that risk." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).  The court assumes for present purposes that the plaintiff has shown that he has serious medical needs.  His claim nevertheless fails because he has not demonstrated that Dr. Santini has been deliberately indifferent to his medical needs.

The plaintiff asked "to be put on the nerve medication []Gabapentin" and that he be "tested and treated by a Neurologist."  Compl. at 17.  Dr. Santini examined the plaintiff, noted that the plaintiff was not in pain at the time of the examination, and prescribed several medications including Naproxen for nerve pain.  Defs.' SOMF ¶ 31.  Dr. Santini did not rule out a consultation with a neurologist; rather, he indicated that he would reconsider the matter at the plaintiff's next visit.  *Id*. ¶ 32.

Based on the parties' representations, it appears that the plaintiff disagrees with Dr. Santini's chosen course of treatment for his condition.  Dr. Santini is not deliberately indifferent to the plaintiff's serious medical needs simply because he prescribes a different method of treatment than the plaintiff requested.  *See, e.g., Gallo v. Sood*, No. 15-1904, 2016 WL 3081952, at *3 (7th Cir. June 1, 2016) (finding that prisoner plaintiff's preference for a particular medication to treat ulcerative colitis does not show that doctor, who prescribed other medications, was deliberately indifferent to his serious medical needs); *Korn v. Marrero*, No. CV 5:15-338, 2016 WL 3676395, at *4 (E.D. Ky. July 7, 2016) (prisoner's "mere disagreement with the dosage of methadone, a potentially-addictive opiod pain medication, is insufficient to indicate deliberate indifference to his medical needs" where prisoner was prescribed lower dosage of methadone and "numerous other medications . . . to

address a plethora of health conditions"); *Tuck v. Maiorana*, No. 15-CV-2556, 2016 WL 3469945, at *3 (W.D. La. Apr. 26, 2016) (recommending dismissal of *Bivens* claim where plaintiff's "complaint shows that he received a massive amount medical treatment, albeit not to his liking or in his preferred time frame," and merely "state[s] a disagreement with the medical staff regarding the procedures necessary to treat his medical issues"), *report and recommendation adopted*, No. 2:15-CV-2556, 2016 WL 3466917 (W.D. La. June 21, 2016); *see also Hodari v. District of Columbia*, No. 96-7116, 1997 WL 215851, at *1 (D.C. Cir. Apr. 23, 1997) (noting that appellant's disagreement with treatment provided "amounts to an allegation of negligence, which is not actionable under the Eighth Amendment"). Consequently, the plaintiff's Eighth Amendment claim Against Dr. Santini is dismissed.

## III. CONCLUSION

The Court concludes that it lacks personal jurisdiction over the individual defendants in their individual capacities, that venue in this district is not proper for any of the plaintiff's claims, that the plaintiff has not exhausted his administrative remedies with respect to his claims against defendants Stover, Wilson, Thompson, VanSickle and the BOP, and that the plaintiff fails to state an Eighth Amendment claim against defendant Santini. For these reasons, the Court grants the defendants' motion.[7] An Order is issued separately.

DATE: September 30, 2016         /s/ *Beryl A. Howell*

                                                                             BERYL A. HOWELL
                                                                             United States District Judge

---

[7] The Court need not address the defendants' remaining arguments.